**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | |
|---|---|
| MANUEL GUTIERREZ, ) | |
| ) | |
| *Plaintiff,* ) | |
| v. ) | |
| ) | Case No: 1:22-cv-00014-WAL-EAH |
| LAMAR CONTRACTORS, LLC, ) | |
| ) | |
| *Defendants.* ) | |
| ) | |
| ) | |
| LAMAR CONTRACTORS, LLC, ) | |
| ) | |
| *Third Party Plaintiff,* ) | |
| v. ) | |
| ) | |
| CERTAIN UNDERWRITERS AT LLOYD'S ) | Case No: 1:22-cv-00014-WAL-EAH |
| OF LONDON SUBSCRIBING ON POLICY ) | |
| NO. BAPCPS23091, ) | |
| ) | |
| *Third Party Defendant.* ) | |

**THIRD-PARTY DEFENDANT CERTAIN UNDERWRITERS AT LLOYD'S, LONDON'S MEMORANDUM IN SUPPORT OF MOTION TO SEVER, OR ALTERNATIVELY, TO BIFURCATE THE THIRD-PARTY COMPLAINT**

Third-Party Defendant, Certain Underwriters at Lloyds, London Subscribing to Policy No. BAPCPS23091 ("Underwriters"), by and through counsel, respectfully move this Court Pursuant to Rules 14(a)(4), 21, and 42(b) of the Federal Rules of Civil Procedure to sever, or in the alternative, bifurcate the third-party complaint filed by Lamar Contractors, LLC ("Lamar") against Underwriters in this action. In support of this Memorandum, Underwriters state as follows:

**PROCEDURAL POSTURE AND PREFACE**

On July 15, 2022, Defendant/Third-Party Plaintiff Lamar filed its Third-Party Complaint against Underwriters. Dkt. #24. On September 20, 2022, Underwriters filed their Motion to Dismiss and Memorandum in Support. Dkt. #36 and #37. Lamar filed an Opposition

Memorandum and Underwriters filed their Reply on November 22, 2022. Dkt. #40 and #41. The Motion is fully briefed and ripe for disposition.

On March 23, 2023, the Court entered an Order setting a status conference on April 24, 2023, directing the parties to exchange initial disclosures pursuant to Rule 26(a)(1) and to prepare and file discovery memoranda. Dkt. #42. The Court noted in the Order that its purpose was "to ensure that this litigation progresses." *Id.* at 2. Because the First Amended Complaint and the Third-Party Complaint are factually and legally distinct, they are two separate actions. Underwriters are of the view that the breach of contract action between Gutierrez and Lamar should proceed and severing it from the Third-Party Complaint will accomplish that objective while Lamar and Underwriters await the Court's ruling on the pending Motion to Dismiss.

The issues between Gutierrez and Lamar appear to be fact intensive involving the details of alleged damage to 39 rental vehicles leased to Lamar. On the other hand, Underwriters' Motion to Dismiss and the coverage issues raised by the Third-Party Complaint are questions of law that have been addressed in the Motion to Dismiss. Whether the Court grants or denies the motion, it is likely that all the coverage issues, and therefore the entire Lamar-Underwriters dispute, will be resolved by that ruling.

For the reasons discussed below, the Court should sever the Third-Party Complaint or bifurcate it to allow Mr. Gutierrez to prosecute his claims and, in the process, develop all the facts. This approach is fair and will yield the additional benefit of clarifying any fact questions that may possibly exist relating to whether there is coverage under the Policy.

I. **BACKGROUND**

    A.    **Factual Background**

Underwriters issued a business automobile insurance policy to Lamar – Policy Number BAPCPPS23091 – effective February 28, 2018 to February 28, 2019 ("Policy"). **Exhibit 1, Parts 1 and 2.**[1] The Policy provides liability and physical damage coverage for vehicles rented by Lamar and added by schedule to the Policy.  Exhibit 1, Part 1 at UWS 0025-36. The liability section (Section II) covers "all sums an 'insured' legally must pay as damages . . . caused by an 'accident' and resulting from the ownership, maintenance and use of a covered 'auto.'" *Id.* at UWS 0026. This section includes a duty to defend, but excludes liability assumed under a contract and liability for damage to property in the "care, custody or control" of the insured. *Id.* at UWS 0026-28. The physical damage section (Section III) provides collision and comprehensive coverage for vehicles in the insured's control, but does not include a duty to defend. *Id.* at UWS 0029.

Lamar came to the Virgin Islands to assist with repairing damage caused by Hurricane Maria. While there, it rented hundreds of vehicles from multiple car rental agencies, including Centerline Car Rental, Inc. ("Centerline"). The Centerline contracts provide:

> Customer/Driver shall be liable . . . for all damages, injuries or death resulting from his operation of the vehicle, his negligence, and shall hold harmless and indemnify CENTERLINE CAR RENTAL, INC. of and from any claim, suit or expense arising therefrom.  Customer/Driver shall be liable for damage to or theft of the vehicle.

---

[1] Exhibit 1, Parts 1 and 2, attached to this Memorandum is a certified copy of Underwriters' Policy. It is also Exhibit 2, Parts 1 and 2, previously filed and attached to Underwriters' Motion to Dismiss. Dkt. #37-2 and #37-3.

3

**Exhibit 2**.[2] Centerline, and now Mr. Gutierrez, contend that several vehicles rented by Lamar were returned in a damaged condition. Lamar thereafter submitted both property damage and liability claims under the Policy to Underwriters. Underwriters conducted a thorough review of all claims submitted, paid those that were covered and denied those that were not. The paid claims were covered under the Section III Physical Damage provision mentioned above. Exhibit 1, Part 1, UWS 0029.

        **B.**        **The Pleadings**

On February 7, 2022, Mr. Gutierrez[3] filed the instant action against Lamar alleging it was obligated under the terms of its rental agreements with Centerline to pay for 38 vehicles returned "in damaged condition." Dkt. #1 at Counts 1-20; 22-39. Each count asserted a breach of contract claim alleging "[u]nder the terms of the rental agreement number [XXX], Lamar is responsible for the cost of repairing the damage."[4] Lamar tendered its defense to Underwriters, which was denied.

On May 1, 2022, Mr. Gutierrez filed his First Amended Complaint, adding a negligence count alleging the damage described in the contract counts "was caused by the negligence of Lamar in the operation or care of each vehicle." Dkt. #11, ¶¶460-464. Lamar filed its answer and affirmative defenses to the First Amended Complaint also on May 1, 2022. Dkt. #12. Lamar tendered its defense to Underwriters a second time and Underwriters again denied the tender.

---

[2] Exhibit 2 attached to this Memorandum is a copy of a sample Car Rental Agreement between Centerline and Lamar. It is also Exhibit 1 previously filed and attached to Underwriters' Motion to Dismiss. Dkt. #37-1.

[3] Both the First Amended Complaint and the Third-Party Complaint allege the claims at issue were assigned by Centerline to Mr. Gutierrez. Dkt. #11, ¶5; Dkt. #24, ¶21. By filing this Motion, Underwriters do not concede that Mr. Gutierrez has standing to bring claims against Lamar or that he is the real party in interest as required by Fed. R. Civ. P. 17.

[4] Count 21 alleges the vehicle was stolen rather than damaged. Theft is not covered under the Policy.

Lamar filed its Third-Party Complaint against Underwriters on July 15, 2022, in which it seeks a defense and indemnity for the damages sought by Mr. Gutierrez. The third-party complaint asserts six counts against Underwriters:

> Count I-Indemnity and Contribution (based on Underwriters' obligations under the Policy);
>
> Count II-Breach of Contract/Breach of Duties to Defend and Indemnify (based on Underwriters' obligations under the Policy);
>
> Count III-Bad Faith (based on Underwriters refusal to defend Lamar against the Gutierrez Action as required by the Policy);
>
> Count IV-Breach of the Duty of Good Faith and Fair Dealing (based on conduct inconsistent with Underwriters' obligations under the Policy);
>
> Count V-Fraud in the Inducement (claiming Underwriters had no intent to supply the coverage outlined in the Policy); and
>
> Count VI-Declaratory Judgment (seeking an order requiring Underwriters to defend Lamar in the Gutierrez Action and pay any property damage awarded against Lamar therein (under the Policy).

*See* Dkt. #24.[5]

On September 20, 2022, Underwriters filed a motion to dismiss the Coverage Action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. #36 and #37. Lamar opposed the motion, which is now fully briefed and pending before this court. Dkt. #40 and #41.

### C. The Court's March 23, 2023 Order

On March 23, 2023, the court set a status conference on April 24, 2023 for the purpose of entering a scheduling order in this case. Dkt. #42. The order requires the parties to proceed with discovery, including the exchange of initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure and Rule 16.1 of the Local Rules of Civil Procedure. *Id.* at 2.

---

[5] To avoid confusion, this Memorandum will refer to the dispute between Mr. Gutierrez and Lamar as the "Gutierrez Action" and the dispute between Lamar and Underwriters as the "Coverage Action."

5

Underwriters believe the Third-Party Complaint will be resolved by the Motion to Dismiss, regardless of whether it is granted or denied. In that event, there is no need for discovery. If, however, the Court denies the Motion and finds an issue it would like the parties to address, the ruling will describe the issue and necessarily identify the nature and the scope of any discovery that might be necessary. Under the circumstances, Underwriters currently are unable to make informed decisions about discovery. Neither Lamar nor Underwriters should be forced to engage in discovery on the Coverage Action before they know precisely what is at issue, if anything, between them. Finally, Underwriters reserve the right to seek a protective order under Fed. R. Civ. P. 26(c) if a party attempts to take discovery from them prior to the Court's ruling on their pending Motion to Dismiss.

## II. THE GUTIERREZ ACTION AND THE COVERAGE ACTION SHOULD BE SEVERED

Underwriters respectfully request that this Court sever the Coverage Action. Alternatively, the Court should bifurcate the Coverage Action but for the reasons set forth below, severance is the appropriate relief.

### A. Standard of Review

The Federal Rules of Civil Procedure allow any party to "move to strike the third-party claim, to sever it or to try it separately." Fed. R. Civ. P. 14(a)(4). The Rules also give courts the authority to "sever any claim against a party." Fed. R. Civ. P. 21. Although Underwriters submit that their pending Rule 12(b)(6) Motion will be dispositive of the Coverage Action whether granted or denied, they nevertheless note the Court also has authority to bifurcate a third-party complaint "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b).

Under Fed. R. Civ. P. 14(a)(4):

> When considering whether to allow, or to strike, a third-party complaint, courts consider whether the third-party complaint would introduce an unrelated controversy or unduly complicate the case at trial.

*Leventhal v. MandMarblestone Grp. LLC,* 2020 U.S. Dist. LEXIS 92059, *18 (E.D. Pa. May 27, 2020) *citing Hearn v. Oriole Shipping LLC,* No. 17-2759, 2018 U.S. Dist. LEXIS 50222 (E.D. Pa. Mar. 27, 2018).

Under Fed. R. Civ. P. 21 and 42(b):

> A district court may sever claims under Rule 21, creating two separate proceedings, so long as the two claims are 'discrete and separate.' In other words, one claim must be capable of resolution despite the outcome of the other claim. By contrast, bifurcation under Rule 42(b) is appropriate where claims are factually interlinked such that a separate trial may be appropriate, but final resolution of one claim affects the resolution of the other.

*Chapman v. Hiland,* 2014 U.S. Dist. LEXIS 204658 (N.D. Jan. 17, 2014) *citing Gaffney v. Riverboat Servs. of Indiana, Inc.,* 451 F.3d 424, 442 (7th Cir. 2006) (internal citations omitted).

Courts have wide discretion in deciding whether to sever or bifurcate claims. *See Kiskidee, LLC v. Certain Interest Underwriters at Lloyd's of London*, No. 2009-077, 2012 U.S. Dist. LEXIS 40894, *6 (D.V.I. Mar. 26, 2012) (citing *Idzojtic v. Penn. R. Co.*, 456 F.2d 1228, 13230 (3d Cir. 1972)). In exercising that discretion, courts must weigh the "various considerations of convenience, prejudice to the parties, expedition, and economy of resources." *Kiskidee*, 2012 U.S. Dist. LEXIS 40894, *6 (citing *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984)); *Acuity v. Cadillac Transp., Inc.*, No. 21-1090, 2022 U.S. Dist. LEXIS 121345, *10 (W.D. Pa. May 24, 2022). The party moving to sever or bifurcate bears the burden of proving such action is warranted. *Acuity*, 2022 U.S. Dist. LEXIS 121345, *10.

It is generally recognized that the question of underlying liability and the question of coverage under an insurance contract do not involve the same questions of fact or law. *See e.g.,*

7

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005); *State Farm Fire & Cas. Co. v. Spector*, No. 15-6752, 2016 U.S. Dist. LEXIS 153942, *17 (E.D. Pa. Nov. 2, 2016) (noting a declaratory judgment action on the rights and obligations under an insurance contract is different from a tort claim where the plaintiff seeks to establish the defendant's liability for its injuries); *Hall v. Babcock & Wilcox*, No. 94-951, 1999 U.S. Dist. LEXIS 11699, *36 (W.D. Pa. July 16, 1999) (noting disputes between an insurer and insured should not be joined with disputes over liability as they are "distinct transaction[s]" and "[t]he evidence that would establish [the] duty to insure is distinct from the evidence that would establish [the insured's] liability" (quoting *Stokes v. Loyal Order of Moose Lodge # 696*, 466 A.2d 1341, 1345 (Pa. 1983) (last two alterations in original)).

    **B.**  **The Balance Weighs In Favor of Severing the Coverage Action From The Gutierrez Action**

As the cases cited above note, severance under Rule 21 (or under Rule 14(a)(4)) will result in two separate actions and two judgments while bifurcation under Rule 42(b) could result in two trials but one judgment. Through this prism, Underwriters do not see a factual or legal basis to keep the Coverage Action tethered to the Gutierrez Action.

The Gutierrez Action and the Coverage Action involve different parties, different contracts, and different questions of fact and law. At issue in the Gutierrez Action is the standing of Mr. Gutierrez, Lamar's obligations to Centerline/Gutierrez under the rental agreements, and not only the amount, but also the nature, of the alleged damages.[6] None of these issues are affected in any way by whether Lamar has coverage under the Policy. In other words, the Gutierrez Action is capable of resolution regardless of the outcome of the Coverage Action.

---

[6] For example, although Gutierrez seeks some different damages depending on the Count, he generally is attempting to recover the cost of repairing physical damage to the vehicle, loss of use of the vehicle, processing fees, prejudgment interest and attorneys' fees and costs.

8

The Coverage Action involves legal questions that turn solely on the terms of the Policy when compared to the allegations of the complaint. Lamar's contractual obligations and the amount of damages that may be established will have no impact on the Coverage Action. The issues and the evidence are distinct and unrelated. Most importantly, each action is capable of being fully resolved without reference to the other.

The factors of economy and expediency also favor severance. If severed, the actions will be resolved independently and at less expense, at least for the Coverage Action. Discovery in the Gutierrez Action will focus on the terms of the rental agreements, the difference in the condition of each vehicle from when it was rented to when it was returned to Centerline, and the actual amount of the damages Gutierrez may be entitled to recover under each contract. The only interest the Coverage Action has in the Gutierrez Action is in seeing an itemization of the nature and the extent of the damages for which Lamar may be liable because some portion may be covered under the Physical Damage Coverage Form (Section III), while other portions may not be covered. That, however, is the extent of the overlap between the two. Underwriters have nothing to offer either Lamar or Gutierrez that will help them sustain their respective burdens of proof in their contract dispute. However, requiring Underwriters to participate in discovery with Lamar and Gutierrez will create an unnecessary burden and expense on them since currently they do not foresee any discovery being required.

Finally, severance will not prejudice either Lamar or Gutierrez. However, Underwriters could be severely prejudiced if they remained tied to the Gutierrez Action because the jury would know that Lamar may potentially be indemnified for the physical damage component of

any loss Gutierrez can prove.[7] In addition, because the Coverage Action essentially seeks declaratory relief, Lamar is not entitled to a trial by jury on those questions and Underwriters should not be forced to incur the time and expense involved in a jury trial. *See Travelers Cas. & Sur. Co. v. Elkins Constructors, Inc.*, No. IP 97-1807, 2000 U.S. Dist. LEXIS 7746, *47 (S.D. Ind. May 18, 2000) (finding a carrier may suffer prejudice when a jury knows the defendant is covered by liability insurance).

### C. Alternatively, the Court May Bifurcate the Case

Severance is the appropriate relief where a claim is separate and distinct and is capable of being decided without regard to the outcome of the other claim. *See Estate of Grieco v. Nat'l Med. Consultants, P.C.*, No. 16-cv-01959, 2021 U.S. Dist. LEXIS 66001, *13 (D.N.J. Apr. 5, 2021). Moreover, severance prevents the Gutierrez Action from being stayed for an indefinite period of time while Lamar and Underwriters litigate the coverage issues. It will avoid unnecessary delay that disadvantages Mr. Gutierrez because he has little to no interest in whether Lamar has insurance coverage so long as Lamar is a solvent entity.

Alternatively, the Court could simply bifurcate the actions and allow them to proceed independently. Even if the Court should deny the Motion to Dismiss and allow the Third-Party Complaint to proceed, the issue or issues that will need to be addressed will necessarily be narrow and discovery should be minimal.

### III. CONCLUSION

For the reasons stated above, Underwriters respectfully ask this Court to sever the Third-Party Complaint from the Gutierrez contract action. If for some reason the Court does not believe

---

[7] It was, and is, Underwriters' position that the only coverage available to Lamar is for a loss to a covered auto under the comprehensive or collision coverages provided in Section III of the Policy. Exhibit 1, Part 1 at UWS 0029-30. Underwriters submit that none of the other damages sought by Gutierrez are covered under the Policy.

severance is appropriate, then Underwriters in the alternative ask the Court to bifurcate the matters so that they can proceed on separate courses given the different nature of each dispute.

Dated: April 7, 2023    Respectfully submitted,

/s/ Neal R. Novak
Neal R. Novak, Esq. (VI Bar #1229)
Novak Law Offices
33 N. LaSalle St., Suite 1900
Chicago, IL 60602
(312) 425-2500 (office)
novak@novakjuris.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of April 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Neal R. Novak

Neal R. Novak, Esq. (VI Bar #1229)
NOVAK LAW OFFICES
33 N. LaSalle St., Suite 1900
Chicago, IL 60602
(312) 425-2500 (office)
novak@novakjuris.com