**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| MANUEL GUTIERREZ, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| v. | ) | |
| | ) | Case No: 1:22-cv-00014-WAL-EAH |
| LAMAR CONTRACTORS, LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |
| LAMAR CONTRACTORS, LLC, | ) | |
| | ) | |
| *Third Party Plaintiff,* | ) | |
| v. | ) | |
| | ) | |
| CERTAIN UNDERWRITERS AT LLOYD'S | ) | Case No: 1:22-cv-00014-WAL-EAH |
| OF LONDON SUBSCRIBING ON POLICY | ) | |
| NO. BAPCPS23091, | ) | |
| | ) | |
| *Third Party Defendants.* | ) | |

**<u>REPLY IN SUPPORT OF THIRD-PARTY DEFENDANT UNDERWRITERS'
MOTION TO SEVER, OR ALTERNATIVELY, TO BIFURCATE
THE THIRD-PARTY COMPLAINT</u>**

Lamar's Opposition Memorandum misinterprets or misunderstands the significant differences between the Coverage Action it filed against Underwriters and the 39 breach of contract claims Gutierrez filed against Lamar. Its Opposition opens with patronizing comments about Underwriters' intentions but, that aside, it misses the point of Underwriters' references to the Gutierrez Action. Underwriters' comments are offered to support their view that the two lawsuits are separate and discrete cases involving very different legal issues with almost no overlapping common facts. In its comment that the Gutierrez and the Coverage Actions "are not nearly as independent as Lloyd's suggests," Lamar states:

> Lloyd's also contends that Lamar's claims against Lloyd's are so distinct from Gutierrez's claims against Lamar that litigating them in the same action is a waste of resources and that it should not have to engage in discovery while the motion is pending.

Dkt. #51 at 2; footnote omitted. First, Underwriters have never taken the position that they should not have to engage in discovery, or that discovery should be stayed, while their Motion to Dismiss is pending; rather, Underwriters have asserted that there is no known discovery required or needed by or against them to resolve the Coverage Action and they have nothing to offer either party on the Gutierrez Action as discussed further below. On the other hand, there is a significant amount of discovery that Lamar and Gutierrez need to address that has nothing to do with Underwriters. This distinction by itself supports Underwriters' position that litigating the two cases together will result in a waste of resources. Second, Lamar posits:

> The nature, extent and types of damages to the subject vehicles is precisely the type of information to be fleshed out in discovery. As such, **all parties** will have a need for this information and it is best that discovery be conducted once, rather than twice as Lloyd's requests.

*Id*. Underwriters do not "have a need for this information" because Lamar has the burden of presenting a covered claim. Therefore, Lamar needs the information. Specifically, it needs to identify the nature and type of damages sustained to the vehicles so that it may present a *prima facie* covered claim(s) to Underwriters for reimbursement pursuant to the terms of the Policy.[1]

For their part, Underwriters do not have any discoverable information relating to the contract dispute and, therefore, Lamar could not conduct discovery on the damages issue "twice" regardless of how the Court disposes of this motion. Underwriters are Lamar's business automobile insurer. They did not rent the cars, cause the collisions, or have any involvement with Centerline in any way until the claims began to be presented years ago. Underwriters have no

---

[1] This statement is consistent with the discussion between counsel and the Court during the April 24, 2023 call. Attorneys Simpson and Cattie discussed their views on the necessary discovery for the contract case; the undersigned on behalf of Underwriters expressed the views set forth herein.

2

independent knowledge of the events that caused each loss nor do they have first-hand knowledge/information about Gutierrez's claims. Underwriters' "knowledge" consists of whatever information Lamar has submitted but it is all hearsay *vis-a-vis* the Gutierrez Action. When Lamar states it is "certainly going to seek discovery against" Underwriters, it will be wasting its time seeking anything from Underwriters relating to the Gutierrez claims. If Lamar wants discovery regarding the Coverage Action, it is free to seek it but it will not overlap with the Gutierrez Action.

## I.     LAMAR IGNORES FED. R. CIV. P. 21

The instant Motion was brought pursuant to three Federal Rules of Civil Procedure – Rule 14(a)(4), Rule 21, and Rule 42(b). Lamar addresses the first and last of these three rules but not Rule 21.

As Underwriters noted in their Opening Memorandum:

> A district court may sever claims under Rule 21, creating two separate proceedings so long as the two claims are 'discrete and separate.' In other words, one claim must be capable of resolution despite the outcome of the other claim.

Dkt. #49 at 7. Lamar does not suggest that the Coverage Action is contingent on, or derivative from, the Gutierrez Action. The Coverage Action truly is capable of resolution despite the outcome of the Gutierrez Action. The only real question in dispute between Underwriters and Lamar is whether Underwriters owe Lamar a duty to defend it in the Gutierrez Action. The indemnity question will resolve itself – Lamar must submit a claim for reimbursement of damages constituting "physical damage" within the meaning of the Policy. If Lamar does that, and satisfies all of the applicable terms and conditions of the Policy, the claim will be paid. What remains an open question is how much, if any, of the Gutierrez claim is comprised of "physical

3

damage" to the vehicles? But, again, that is not a question Underwriters can, or should, address. These questions support the conclusion that the two actions are clearly "discrete and separate."

Lamar addresses severance in the context of Fed. R. Civ. P. 14(a)(4) and relies on *Galt Capital, LLP v. Seykota,* 2002 W.L. 31887706 at *3 (D.V.I. 2002) to present the factors to be considered when severance is at issue – (1) whether there are significantly different issues; (2) whether different witnesses and different documentary proof is required; (3) whether the opposing party will be prejudiced if a claim is severed; and (4) whether the other party will be prejudiced if it is not severed. Dkt. #51 at 3. Lamar notes later in its Memorandum ". . . the first two factors weigh against severance." They do not.[2]

The first factor, whether the issues are significantly different, must be answered in the affirmative. Whether Underwriters owe a duty to defend, for example, is not on the same legal page as whether Lamar breached the terms of the car rental agreements with respect to any one of the 39 contracts at issue. Whether there is coverage for "physical damage" to any of the vehicles is also very different from whether Lamar breached any of the rental contracts. In addition, the Policy contains terms and conditions that must be satisfied before coverage attaches, and these questions are also completely independent from the Gutierrez Action.

The second factor, whether the separable issues require testimony of different witnesses and different documents, is a closer call but weighs in favor of severance. The insurance policy is the most significant and relevant document at issue in the Coverage Action; it is not at issue or relevant to the breach of contract action. Also, if someone were needed to testify on behalf of Underwriters in the Coverage Action, that same person would not be competent to testify in the

---

[2] Lamar repeatedly refers to Underwriters as being "liable" or as potentially having "some liability under the insurance policy for damages." Dkt. #51 at 4, 5-6. "Liability" is a tort concept. The Lamar/Underwriters dispute involves a Business Automobile Policy, not a tort claim, and Underwriters do not have "liability" regardless of the outcome. If Lamar sustains its burden and satisfies all terms and conditions of the Policy, it will have "coverage" for the loss, but Underwriters will not be "liable" to Lamar for anything at any time.

4

Gutierrez Action as he or she would not have any first-hand knowledge of the facts. That Lamar may use the same witnesses to testify in both actions is coincidental and does not favor either side. However, overall, factor number two weighs in favor of severance.

The third factor, whether Lamar will be prejudiced, also weighs in favor of severance. Lamar is the effective plaintiff in the Coverage Action it chose to bring. It cannot turn around and now claim "victim status" if the case is severed. It wants coverage and it must prosecute the Coverage Action, which happens to be a separate lawsuit. As Underwriters noted in their Opening Memorandum, questions relating to underlying liability and questions relating to coverage under insurance contracts do not generally involve the same questions of fact or law. Dkt. #49 at 7-8. If it were typical to implead the insurer in every underlying action, the case law would be replete with instances of third-party actions against insurers. In fact, insurers are rarely joined in the direct, underlying action for many of the reasons set forth in this motion.

The fourth factor, whether Underwriters would be prejudiced if severance is not granted, also clearly weighs in favor of severance. Lamar mis-analyzes on the fourth factor:

> Lloyd's cannot seriously claim that a jury's resolution of a claim of indemnification/contribution against it constitutes prejudice, for if it did, insurers would be immune from suit. **** There is nothing untoward about Lamar introducing evidence that Lloyd's is liable to it for any alleged damages.

*Id.* at 5. Here, Lamar again confuses tort and insurance principles when it mentions "contribution" because Underwriters would never be "liable" to Lamar for contribution since they are not joint tortfeasors. In any event, in a standalone lawsuit for coverage, which the Third-Party Complaint should be, the question of indemnification, which is based on insurance policy and not common law, is obviously something to be addressed. However, in the procedural posture of the current case, introducing evidence that there may be coverage under the Policy for

the losses Lamar may be obligated to pay Gutierrez in the breach of contract action is highly prejudicial to Underwriters because it will allow the jury to use knowledge of insurance in its deliberations over whether Gutierrez should recover from Lamar and, if so, in what amount. There are no limiting instructions or other cautionary measures that can be taken to eliminate the unfair prejudice and confusion that will be caused by exposing the jury to both the Gutierrez Action and to the Coverage Action. In other words, this is not a Fed. R. Evid. 411 question as Lamar notes; it is a Fed. R. Evid. 403 question. Therefore, factor four strongly weighs in favor of severance.

Next, Lamar inexplicably jumps from discussing the factors for severance under Rule 14(a)(4) to whether its third-party action is proper. Dkt. #51 at 3. The case law Lamar cites is inapplicable because, again, the tort concepts those cases are based on do not apply here. The disconnect is illustrated by Lamar's reliance on *FDIC v. Bathgate,* 27 F.3d 850, 873 (3rd Cir. 1994) and its citation to *Wright* and *Miller*. As those authorities note, a third-party claim is appropriate "under some theory of secondary liability . . . or some other theory of derivative liability recognized by relevant substantive law." *Id.* Again, Underwriters will not under any circumstances be "liable," let alone "derivatively liable," to Lamar. At best, they may owe Lamar some form of coverage if Lamar can satisfy all the applicable terms and conditions in the Policy. Any payments Underwriters have made, or may make in the future, are not based on the tort concepts of indemnification or contribution, nor are they the equivalent of compensatory damages. In short, they are not any form of damages that could be awarded to Gutierrez in the contract action. Rather, they are insurance proceeds that, if paid, will be paid pursuant to the terms and conditions of an insurance policy.

Along these lines, Lamar also argues that its "claims for contribution and indemnification are precisely the type of claims properly raised in a Third-Party Complaint." *Id.* at 4, *citing Turner Consulting and Contracting, LLC v. GMS Mfg. Corp.,* 2020 U.S. Dist. LEXIS 85923 * (D.V.I. 2020). *Turner* involves an evaluation of the standards to be applied in determining whether a third-party action is appropriate. Turner, the general contractor, subcontracted with GMS. Turner alleged that GMS performed defective work, failed to use the agreed upon materials and performed work in a negligent manner. *Id.*, *1. GMS moved to file a third-party complaint against Inflow Solutions, LLC and Daniel Driscoll contending that the Inflow products GMS used in the project were certified by Inflow and Driscoll. During a meeting involving GMS, Inflow and Turner, where Turner complained about GMS' performance, Inflow revealed that it made a product superior to the one GMS was using on the project. This disclosure purportedly was a catalyst for Turner to instigate the lawsuit. In denying the GMS' motion to implead Inflow, the court noted:

> While the underlying facts of both the original complaint and the proposed third-party complaint are related to the Turner construction project, GMS' purported claims against Inflow are separate from and unrelated to Turner's claims and, while the evidence and witnesses may overlap to some extent, the legal issues are distinct. Whether Inflow violated a duty of good faith under its contract with GMS is wholly separate, for example, from whether GMS breached its contract with Turner by performing it poorly, which is the gist of the Turner action against GMS.

*Id.*, *6. *Turner* is good support for Underwriters' position here. The underlying facts in the Gutierrez Action are relevant to whether there is coverage but Lamar's claims against Underwriters are separate from and unrelated to Gutierrez's claims against Lamar. Whether Underwriters owe Lamar a duty to defend it in the Gutierrez Action is wholly separate, for example, from whether Lamar breached any of the 39 car rental contracts it had with Centerline. While it is too late to deny Lamar's Motion for Leave to File the Third-Party Complaint, it is not

7

too late to adjust the procedural posture that has been created, and severing the actions accomplishes that objective.

Lamar also relies on *J.R. Simplot Company v. McCain Foods USA, Inc.*, 2020 U.S. Dist. LEXIS 32074 * (D. Idaho 2020) for the proposition that even though there is "some overlap" between an original plaintiff's claims and the claims brought against a third-party defendant, severance is not preferred. Dkt. #51 at 3. *Simplot* is a complicated patent infringement case wherein Simplot sued McCain over utility and design patents issued to both parties. After the court issued a particular ruling, McCain filed a motion to reconsider asking the court to revisit its definition of the term "high electric field." *Id.,* *3-4. In its decision reconsidering the definition, the court wrote "because 'the issue of indemnification is interwoven with the issue of infringement itself,' 'a separate lawsuit [was] unnecessary.'" *Id.*, *4. Based on that ruling, Simplot filed a motion for leave to file a third-party complaint against entities from whom it sought some form of contractual indemnification. *Id.*, *40-42. The court granted the motion and the third-party defendants filed a motion to sever and stay Simplot's indemnity claims. *Id.*, *40. In reaching its conclusion, the court noted:

> The court has weighed the competing interest here and finds that severance may be necessary. It is true that juries rarely know about indemnity agreements and presenting that here *could* cause confusion or prejudice.
> ***
> While there is potential for prejudice later on during trial, the court finds that there will not be undue prejudice in moving forward with discovery at the present time.

*Id.*, *54-55. The *Simplot* court struggled with this decision and caveated it in 21 separate footnotes. The legal and factual differences between the Gutierrez and the Coverage Actions stand in stark contrast to the complicated and intertwined scientific disputes at the heart of that

8

patent infringement case. In any event, based on the foregoing analysis of the authorities Lamar relies on, its assertion that the claims brought against Underwriters "for contribution and indemnification are precisely the type of claims properly raised in a Third-Party Complaint" is simply wrong. Dkt. #51 at 4.

## II. BIFURCATION IS APPROPRIATE ONLY IN THE ALTERNATIVE

Lamar's argument against bifurcation is largely predicated on what it deems to be an "admission" that Underwriters "concede," or in another passage "admit," to "partial liability." Dkt. #51 at 6. Underwriters have addressed this misconception repeatedly throughout this Reply Memorandum and only note it again here because it is the substance of Lamar's Opposition.

In fact, Underwriters agree that bifurcation is not the appropriate remedy; severing the cases is the best result for the parties. This will allow them to freely conduct the litigation based on the separate demands bearing on each case. In the Coverage Action, there is not much to be done; in the Gutierrez Action, there is much to be done. Severing the claims would allow each case to proceed at its own pace.

## III. CONCLUSION

Coverage actions and underlying tort, contract, or other common law actions are rarely joined in one proceeding. While initially it may have appeared to be "convenient" on the surface, it is treacherous in reality. For purposes of determining the duty to defend, the question generally turns on the facts alleged in the operative pleading, not the truth of those facts. Indemnification turns on whether the insured satisfies the terms and conditions of the contract, not whether the insurer is liable to its insured for contribution or indemnification as a joint tort-feasor. The Gutierrez Action and the Coverage Action are "two ships passing in the night." These reasons, and the others set forth both in this reply memorandum and in Underwriters' opening

memorandum, support their request that the Court sever this action from the underlying action. That will produce the fairest result for all parties involved.

Dated: April 25, 2023 Respectfully submitted,

/s/ Neal R. Novak
Neal R. Novak, Esq. (VI Bar #1229)
Novak Law Offices
33 N. LaSalle St., Suite 1900
Chicago, IL  60602
(312) 425-2500 (office)
novak@novakjuris.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of April 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                /s/ Neal R. Novak

Neal R. Novak, Esq. (VI Bar #1229)
NOVAK LAW OFFICES
33 N. LaSalle St., Suite 1900
Chicago, IL  60602
(312) 425-2500 (office)
novak@novakjuris.com